UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ILA L. BROWN,<br><br>                              Plaintiff,<br>v.<br><br>DESERT PARKWAY BEHAVIORAL HEALTHCARE HOSPITAL, LLC,<br><br>                              Defendant. | Case No. 2:15-cv-02203-MMD-PAL<br><br>ORDER<br><br>(Mot. to Compel Arbitration – Dkt. #8)<br>(Mot Strike Sur-Reply – Dkt. #16) |

This matter is before the Court on the Motion to Compel Arbitration (Dkt. #8), filed January 8, 2016, by Defendant Signature Health Care Services, LLC, d/b/a Desert Parkway Behavioral Healthcare Hospital (the "Hospital"). Also before the court is Defendant's Motion to Strike Plaintiff's Improper Sur-Reply (Dkt. #16). The court held a hearing on the motions on February 23, 2016. Guinness Ohazuruike appeared on behalf of the Plaintiff, and Marcus Smith and Kristol Ginapp appeared on behalf of the Defendants. The Court has considered the Motion, Plaintiff Ila L. Brown's Response (Dkt. #10), Defendant's Reply (Dkt. #13), the Declaration of Ila Brown in Support of Response to Defendant's Motion to Compel (Dkt. #14), Plaintiff's Supplemental Brief to Plaintiff's Response to Defendant's Motion to Compel Arbitration (Dkt. #15), the Motion to Strike Sur-Reply (Dkt. #16),  and the arguments of counsel at the hearing.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The Complaint (Dkt. #1) in this case was filed on November 19, 2015. It initially named Signature Healthcare Services, LLC, dba Desert Parkway Behavioral Healthcare Hospital as the Defendant. An Amended Complaint (Dkt. #11) was filed January 15, 2016, after this motion was filed substituting Desert Parkway Behavior Healthcare Hospital, LLC as the Defendant. The amended complaint asserts that Defendant Desert Parkway Behavioral Healthcare Hospital, LLC

1

is a domestic corporation doing business in Las Vegas, Nevada. Complaint (Dkt. #11), ¶3. The complaint asserts Title VII claims and 42 U.S.C. § 1981A claims for sex and gender discrimination, and a state claim for intentional infliction of emotional distress. The amended complaint alleges that Plaintiff was subjected to sexual harassment and a sexually hostile work environment by co-employees of the hospital. She claims that she complained to management and filed a report with the Las Vegas Metropolitan Police Department. Management did a perfunctory investigation, but did not remediate the problem. Plaintiff alleges that she was retaliated against and ultimately fired for complaining of her unlawful treatment.

Defendant Signature Healthcare Services LLC was named as the Defendant at the time this motion to compel was initially filed. Counsel for Signature advised Plaintiff that it was not a proper party to this case because it was not Plaintiff's employer. Before Plaintiff's response to the motion to compel was filed, Plaintiff filed an amended complaint substituting Desert Parkway Behavioral Healthcare Hospital, LLC ("Desert Parkway") as Defendant. The motion to compel claims that, as a condition of Plaintiff's employment with Desert Parkway, she signed a written arbitration agreement. A copy of the arbitration agreement Plaintiff signed is attached as Exhibit A to the motion. The arbitration agreement contains a binding agreement to arbitrate all disputes arising from employment with Desert Parkway and provides:

> In the event of any dispute, claim or controversy between the Employee and the company, both parties agree to submit such dispute, claim or controversy to final and binding arbitration, including, but not limited to . . . civil tort and employment discrimination such as . . . [T]itle VII of the Civil Rights Act . . . .

Defendant therefore seeks to compel arbitration under the Federal Arbitration Act arguing strong federal policy favors enforcing agreements to arbitrate disputes. Citing *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 91 (2000), Desert Parkway argues that the party opposing arbitration bears the burden of proving that the claims at issue are not suitable for arbitration. The arbitration agreement in this case is valid and enforceable, the claims raised in Plaintiff's complaint fall squarely within the scope of the arbitration agreement, and the court should therefore compel the parties to arbitrate their disputes, and stay further proceedings in this case until arbitration has been completed.

2

1  Brown opposes the motion arguing she was employed as a nurse practitioner by Defendant Desert Parkway Behavioral Healthcare Hospital which is a subsidiary of Signature Healthcare Services, LLC. The arbitration agreement that is attached as Exhibit A to the motion was signed by a representative of Aurora Behavioral Healthcare, not Desert Parkway Behavioral Healthcare, LLC. Therefore, Desert Parkway is not a party to the purported arbitration agreement and cannot enforce its terms against her. In the unlikely event the court compels arbitration, Brown asks that the court retain jurisdiction.

Desert Parkway's reply addresses Brown's argument that it is not a signatory to the arbitration agreement Plaintiff signed. The reply is supported by the declarations of Katrina Hardy, an attorney and associate counsel and corporate compliance officer at Signature Healthcare Services, LLC, and Kristine de la Paz, the Director of Human Resources at Aurora Charter Oak-Los Angeles, LLC. The motion is also supported by several exhibits consisting of Plaintiff's application for employment at Desert Parkway Behavioral Healthcare Hospital, a July 30, 2014, offer of employment letter on the letterhead of Desert Parkway Behavioral Healthcare Hospital, an employee handbook acknowledgement agreement signed by the Plaintiff and a representative of Aurora Behavioral Healthcare, an at will employment agreement signed by Plaintiff and a representative of Aurora Behavioral Healthcare, and a job description for the registered nurse position for which Brown applied on the letterhead of Desert Parkway Behavioral Healthcare Hospital which Brown signed on August 12, 2014. *See* Reply (Dkt. #13), Exhibits A through G.

The reply and supporting declarations establish that Aurora Behavioral Healthcare is a brand name for a series of hospitals owned by Signature, a Michigan Limited Liability Company. Signature was formed in 2000 in Michigan and began to acquire mental health hospitals in California. When Signature acquired these hospitals, it used a brand name convention establishing the business entity names using the brand name "Aurora" plus the city of the hospital or previous name of the hospital. Beginning in 2009, Signature expanded its holdings to other states including Nevada and Texas. Although the hospitals acquired after 2009 did not use

the brand name "Aurora" for naming the hospital, they continued to use "Aurora" both formally and informally for internal business purposes.

Whenever a new hospital is opened, Kristine de la Paz, the Director of Human Resources at Charter Oak Hospital "on-boards" hospital staff by providing training, instruction and personnel documents. Some of the personnel documents provided by de la Paz contain the name of the specific hospital in question, but others contain the name "Aurora" and others use the name "Aurora" interchangeably with the name of the hospital in question. In this case, the arbitration agreement Plaintiff signed identifies Aurora Behavioral Healthcare as the company entering into the arbitration agreement. All of the hospitals owned by Signature use the same arbitration agreement which uses the name "Aurora".

Signature expanded its holdings in Nevada by building Desert Parkway Behavioral Hospital in Las Vegas in 2012. Desert Parkway Hospital is operated by Defendant Desert Parkway. Kristine de la Paz "on-boarded" Desert Parkway staff by providing training, instruction and personnel documents. One of the documents de la Paz provided to Desert Parkway was the arbitration agreement at issue. The reply argues that the declarations and attached exhibits establish that Brown was aware that the name Desert Parkway was used interchangeably with Aurora Behavior Healthcare because the employment application, for example, asks questions such as whether Plaintiff had ever worked for Aurora Behavior Healthcare in the past or had previously applied to any Aurora Behavioral Healthcare facility. Many other documents presented in the employment package establish that Desert Parkway was the employer, but also contains references to Aurora Behavioral Healthcare. The documents attached as exhibits to the reply were all forms that Brown signed the date she was hired. Brown has admitted that Desert Parkway is her employer. Under all of these circumstances, the court should compel arbitration of the parties' disputes.

Plaintiff filed a supplemental brief in response to Defendant's motion, which is actually a response to the reply. The supplemental brief is supported by the declaration of Ms. Brown, which was attached and was also filed separately as Docket No. 14. The supplemental filing essentially argues that Plaintiff's employer is Desert Parkway and Desert Parkway is not a

4

signatory to the arbitration agreement. Plaintiff contends that Desert Parkway Behavioral Healthcare is a legal entity different from Aurora and that the court should therefore deny the motion to compel arbitration. Desert Parkway field a motion to strike the supplemental response as an improper sur-reply

## II. DISCUSSION

### A. Legal Standard

Congress enacted the Federal Arbitration Act ("FAA") in 1925 to overcome judicial resistance to arbitration. *A.T. & T. Mobility*, *LLC v. Concepcion*, 563 U.S. 333, 339 (2011), citing *Hall Street Assocs.*, *L.L.C. v. Mattel*, *Inc.*, 552 U.S. 576, 581 (2008)); *Buckeye Check Cashing*, *Inc.*, *v. Cardegena*, 526 U.S. 440, 441 (2006). In doing so, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Because the FAA creates a strong presumption in favor of enforcing arbitration agreements, the Supreme Court has stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Shearson/Am. Express*, *Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987) (arbitration agreements should be rigorously enforced); *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24–25 (1983) (federal policy favors arbitration).

Section 2 of the FAA is the "primary substantive provision of the act." *Concepcion*, 563 U.S. at 339 (citing *Moses H. Cone*, 460 U.S. at 24). It provides, in relevant part, as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Courts have generally referred to this language as the savings clause. *See, e.g.*, *Concepcion*, 563 U.S. at 339. The Supreme Court has described this provision as reflecting a "liberal federal policy favoring arbitration." *Id*. Section 2 also reflects the "fundamental principle that arbitration is a matter of contract." (citing *Rent–A–Center*, *West*, *Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Consistent with these principles, courts must place arbitration

agreements on an equal footing with other contracts. *Id.* (citing *Buckeye Check Cashing*, 546 U.S. at 443). Arbitration agreements must be enforced according to their terms. *Id.* (citation omitted).

The Supreme Court has recognized only two limitations on the enforceability of arbitration provisions governed by the FAA. *Southland Corp.*, 466 U.S. at 10–11. First, they must be part of a written maritime contract or contract "evidencing a transaction involving commerce." *Id*. Second, arbitration clauses may be revoked only upon "grounds as exist at law or inequity for the revocation of any contract." *Id.* at 11. The savings clause of Section 2 permits courts to invalidate arbitration agreements using "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion*, 563 U.S. at 339 (citing *Doctors Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

As a general rule, a non-party to an arbitration agreement is not bound by the agreement and does not have the right to enforce the agreement. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.") However, a non-signatory to an arbitration agreement may be bound by the agreement under traditional "principles of contract and agency law." *Letizia v. Prudential Bache Secur., Inc.* 802 F.2d 1185, 1187 (9th Cir. 1996). The Ninth Circuit has held that ordinary contract and agency principles that may apply to non-signatories include: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)); *see also Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007) (noting that "an obligation to arbitrate does not attach *only* to those who have actually signed the agreement to arbitrate").

There are two lines of cases which apply to non-signatories. *Id.* Under the first line of cases, non-signatories have been compelled to arbitrate where the non-signatory "knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement." *Id.* (citations omitted). In this situation, equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that

6

1 contract imposes." *Id*. (citing *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir.
2 2004)).  This line of cases has no application to the parties' current dispute.

3       Under the second line of cases, signatories may be compelled to arbitrate claims brought
4 by non-signatories "at the non-signatory's insistence because of the close relationship between
5 the entities involved." *Id.*  For example, agents of a signatory can compel the other signatory to
6 arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their
7 behavior as agents or in their capacities as agents, *Letizia v. Prudential Bache Secs., Inc.*, 802
8 F.2d 1185, 1187–88 (9th Cir. 1986), and (2) the claims against the agents arise out of or relate to
9 the contract containing the arbitration clause and are consistent with the language of the
10 arbitration clause, *Britton v. Co-op Banking Group*, 4 F.3d 742, 747–48 (9th Cir. 1993). *Amisil*
11 *Holdings Ltd.*, 622 F. Supp. 2d at 832 (compelling arbitration because the plaintiff's dispute with
12 two individual defendants had a significant relationship with the contract signed by the plaintiff
13 and the defendant company); *see also Garcia v. Dell, Inc.*, 905 F. Supp. 2d 1174, 1178 (S.D. Cal.
14 2012) (compelling plaintiff, a nonsignatory agent, to comply with an arbitration agreement
15 signed by her employer and a defendant creditor).

16       Brown alleges that she was employed by Desert Parkway Hospital.  During oral argument
17 her counsel acknowledged that Desert Parkway was her employer and paid her for her services.
18 All of her claims in the complaint and amended complaint arise out of her employment with
19 Desert Parkway and alleged unlawful employment practices of co-workers and management of
20 the hospital.  The declarations provided with the reply brief clarify that "Aurora" is used as a
21 brand name for the hospitals that Signature acquired, including Desert Parkway.  Plaintiff's own
22 papers acknowledge that Desert Parkway is a subsidiary of Signature.  The arbitration agreement
23 was signed by Brown the day she was hired.  Various documents that Brown signed the same
24 day acknowledge that Desert Parkway was her employer, but contain references to the Aurora
25 brand name.  For example, Brown signed an employee handbook acknowledgement agreement
26 which contained a paragraph that she expressly understood that, except for the arbitration and
27 employment at will status, the "Company" reserved the right to change its policies and
28 procedures.  *See* Reply, Exhibit F.  Plaintiff signed an at will employment agreement indicating

7

that nothing in handbook altered the at will relationship between her and the Company. *See* Exhibit F. The job description for the registered nurse position Brown applied for is on the letterhead of Desert Parkway Behavioral Healthcare Hospital and contains a signature line which Plaintiff signed and initialed acknowledging receipt and understanding of "Aurora's job description attestation." Reply, Exhibit G.

In short, it is clear from the declarations and exhibits that Plaintiff's employer was Desert Parkway Behavioral Healthcare Hospital LLC, but that the Aurora brand name was used on the employment documents Brown signed. Plaintiff does not dispute that she signed any of the documents that are attached as exhibits to the reply. The sole basis for opposing the motion to compel is Brown's claim that Desert Parkway Behavioral Healthcare Hospital, LLC is not a signatory to the agreement. Having reviewed and considered the moving and responsive papers and supporting declarations and exhibits, the court is satisfied that Plaintiff signed a binding and enforceable agreement to arbitrate employment disputes with her employer, Desert Parkway Behavioral Healthcare Hospital, LLC, although the signature line and the arbitration agreement uses the Aurora Behavioral Healthcare brand name.

For the reasons explained,

**IT IS ORDERED** that:

1. Defendant's Motion to Compel Arbitration (Dkt. #8) is **GRANTED**.
2. Defendant's Motion to Strike Plaintiff's Improper Sur-Reply (Dkt. #16) is **DENIED** as the reply explained the relationship between Desert Parkway and the Aurora Behavioral Healthcare brand name not addressed in the initial motion to compel.
3. The parties shall immediately take steps to comply with the provisions of the arbitration agreement.
4. The court will retain jurisdiction and **STAY** proceedings in this case until arbitration is completed.

5. The parties shall be required to provide status reports every 60 days until arbitration has been completed. The first status report is due **April 25, 2016**.

DATED this 1st day of March, 2016.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE